Millner *v.* Elias.

---

SELIA MILLNER *vs.* SHAWOOL ELIAS.

Third Judicial District, New Haven, June Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The jurisdiction of selectmen, when acting as fence viewers under § 5135 of the General Statutes, is strictly limited to ordering the repair of divisional fences, i. e., fences upon known and recognized dividing lines, and if the boundary is unknown or in dispute, they have no power to act; therefore, in the present case, which was an action under the statute by the plaintiff to recover from the defendant, an adjoining landowner, the cost of certain repairs to an existing fence which the defendant had failed to make in violation of an order by the selectmen, evidence offered by the defendant as to the location of the boundary line was admissible, since it tended to prove that the line was in dispute and that, therefore, the selectmen's order was void and since, if believed by the jury, it would contradict an essential allegation of the complaint, viz., that the fence was a divisional fence.

The defendant was not precluded from claiming at the trial of this case that the divisional line was in dispute, merely because he failed to make the objection to the selectmen.

Parol agreements for dividing fences, if executed, are not within the statute of frauds, and are binding upon the parties thereto; but they do not, *per se*, like covenants, run with the land against purchasers without notice and attaching creditors; nor is a successor in title bound thereby until he takes steps to secure a new division under the statute.

Argued June 3d—decided July 28th, 1924.

Millner *v.* Elias.

ACTION to recover the cost of repairing a divisional fence between adjoining landowners, brought to the Court of Common Pleas in Fairfield County and tried to the jury before *Booth, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

The complaint alleges the existence of a divisional fence between the lands of the respective parties, and its disrepair through neglect of defendant; that plaintiff called out the selectmen of the town of Danbury to view the same, which the latter did and found the fence to be insufficient, of which fact they gave notice to the defendant, who neglected to repair the fence within fifteen days thereafter; that afterward, plaintiff repaired the fence at her own expense, and later the selectmen aforesaid made and signed a written estimate of the value of the repairs, and estimated it at $234.71. The answer was a general denial. The jury rendered a verdict for defendant.

The plaintiff claimed to have proved that she owned a lot with a dwelling thereon in Danbury and that the defendant was the owner of an adjoining house and lot; that she acquired her holding by virtue of the provisions of a bond for a deed in May, 1907, and on March 10th, 1920, received a deed of the premises; that defendant acquired his property May 1st, 1914, by deed from William F. Buzaid, who in turn acquired it June 3d, 1912, from Rhetta Collier; that in 1912, the rear of the divisional fence between the properties was out of repair and that the front part of the fence had been entirely removed several years before, and that in 1912 Buzaid communicated with plaintiff as to the division fence, and she also employed a surveyor, who made a survey of the premises; that thereafter the plaintiff and Buzaid orally agreed that she would maintain the rear half and he the front half of the division fence, whereupon Buzaid constructed the front half of the

fence, which work was supervised by defendant, then a tenant of Buzaid and residing upon his property, and the plaintiff thereafter maintained the rear half of the fence; that in 1922 the front half of the fence was out of repair and plaintiff called upon defendant to repair the same, which he refused to do, claiming that the boundary line was in dispute; that between 1912 and 1922, nothing was said between the parties as to the disputed boundary, or the obligation of the parties to maintain their respective portions of the fence; that on June 30th, 1923, plaintiff called upon the selectmen of the town of Danbury to view the fence, which they did and found it insufficient and gave written notice to defendant to repair the same; that defendant neglected to repair within fifteen days, and plaintiff proceeded to make repairs, and on September 7th, 1923, the selectmen made a written estimate of the value of the repairs as amounting to $234.71; that before the selectmen gave the written notice aforesaid, they called on defendant, who informed them that he would make repairs if ordered to do so; that the deed by which the defendant acquired title to his property described the same as having a frontage of sixty-six feet on Elm Street and a depth of three hundred and twenty-five feet, more or less, and the property was so described in all deeds, beginning with a conveyance on August 18th, 1891, to one Nettie E. Comes, and in all prior deeds affecting the defendant's property, the same was described as containing one half an acre, more or less, but with no reference to any specific number of feet frontage or depth; that on a map prepared by a witness for the defendant, one Kellogg, showing the location of the fence repaired by the plaintiff, the fence was shown to be on a line exactly sixty-six feet west of the easterly line of the defendant's property.

The defendant claimed to have proved that the boundary line between the properties was well established, and that the division fence located upon the boundary line has been maintained by the adjoining owners of both of the parcels for a period of from fifty to sixty years; that the portion of the fence built by the plaintiff and claimed by her to belong to the defendant had for a period of from forty to fifty years been maintained by the predecessors in title of the plaintiff; that when Buzaid purchased his property, he requested the plaintiff to agree with him upon the construction of a divisional fence, but was unable to reach any agreement, because the plaintiff disputed the location of the division line between the respective properties, and claimed to be financially unable to build the front portion of the fence, and Buzaid at that time denied any obligation to maintain the front portion of the fence; that from this date until the date of this trial, the respective owners have been unable to agree as to the location of the boundary line; that in 1912 Buzaid constructed a fence in the front portion of his property entirely upon his own land, about one or two inches inside the divisional line, for the purpose of protecting his tenants from annoyances caused by children and chickens of the plaintiff trespassing upon his land, and at no time after he acquired title from Buzaid did the defendant make any repairs to the front portion of the fence built by Buzaid, and this front portion of the fence remained as built and located by Buzaid until 1922, when its condition was such that repairs were needed; that no agreement was ever made between the plaintiff and defendant as to the division of any fences then existing upon or near the boundary line between their properties; that in 1922, the defendant received a communication from the plaintiff regarding repairs to this fence, and he thereupon informed the

plaintiff that the boundary line was in dispute and that he refused to make any repairs; that on May 24th, 1923, the defendant received a notice from the selectmen ordering him to make repairs to the front portion of the fence, upon which he notified the selectmen that the line was in dispute, and they thereupon rescinded the order; that from the time that the plaintiff first took up with the selectmen the matter of viewing the fence between her property and that of the defendant, until the issuance of the order of July 3d, 1923, the selectmen had been repeatedly informed by the defendant or his attorney that the boundary line between the premises was in dispute; that the fence which the plaintiff repaired was not located on the divisional line between the properties and was not a divisional fence.

Various witnesses who testified as to the location of the fence in question, were inquired of by plaintiff's counsel as to the location of the same, and upon cross-examination were asked if they knew the location of the line of division between the parties, to the admission of which testimony the plaintiff excepted. Defendant also introduced several witnesses who were examined in chief as to the location of the division line; the plaintiff excepted to the admission of this testimony. Plaintiff claimed that the location of the divisional line was not in issue. The court admitted the evidence on the ground that "the question of where the line was would be material in arriving at the ultimate question of whether or not it [the fence] was a divisional fence."

In her reasons of appeal, the plaintiff assigns error in the admission of the testimony as above stated, and also in certain portions of the charge to the jury as given, and in neglect to charge as to certain claims made in the case. The portions of the charge involved in the treatment of the reasons of appeal will be referred to in the opinion.

*Samuel Mellitz,* with whom was *Charles Weingarten,* for the appellant (plaintiff).

*Thomas A. Keating,* for the appellee (defendant).

KEELER, J. As divided in the brief of the appellant, the errors assigned are considered under three groups. In the first group, error is assigned in the admission by the court of testimony as to the location of the division line between the respective properties of the parties, and in its charge as to the effect of such evidence. In the second group, in the failure of the court to charge the jury that the fence in question was a division fence. In the third group, in charging the jury that the defendant was not bound by the division of fence entered into by defendant's predecessor in title.

Regarding the plaintiff's first claim of error, predicated on admission of testimony as to the division line between the properties of the parties, and the charge of the court with reference to this subject, we may observe that it is not contended by either party, or held by the court, that the award of the selectmen acting as fence viewers, is in any way conclusive as to the location of a boundary line. *Edgerton* v. *Moore,* 28 Conn. 600, 604. The proceeding is under General Statutes, § 5135, which provides that if any person shall fail to keep in repair his division fence, a party aggrieved thereby may call on the selectmen to view it, and they, if they find it insufficient, shall give written notice to the person bound to repair it, and that if repairs are not made within fifteen days, the party aggrieved may repair the fence, and may recover double the cost of such repairs as estimated in writing, plus the fees of the selectmen.

The question here raised relates primarily to the jurisdiction of the selectmen. Their statutory power

and jurisdiction relates only to causing repair of a divisional fence. The defendant challenged the jurisdiction of the selectmen on the ground that the location of the divisional line between the properties involved was in dispute. Plaintiff claimed that it was well established. If the testimony offered by defendant as to the location of the fence and of the divisional line was admissible as outlined in the statement of facts, and the charge of the court with reference to such testimony correct, then the jury might properly have found that the selectmen were without jurisdiction, in that the plaintiff had not proved one of the necessary allegations of her complaint, that is, that the fence in question was a division fence.

Upon this subject the court charged as follows: "As the court has said in a similar case, 'it was competent for the defendant to show that the fence viewers had no jurisdiction of the subject-matter, for in such case their action would be void. And evidence that tended to show that there was no known or recognized line between the parties, tended to show a want of jurisdiction in the fence viewers, for they can only view and decide upon a known line. The plaintiff, in good faith, may have supposed she was the owner of more land' and so forth, 'but if her claims were not recognized by the adjoining proprietors and there was no settled and known line between them, the fence viewers had no authority to undertake to pass upon the validity of her claims, and any action of the fence viewers in attempting to locate an uncertain line between these parties was not obligatory, nor could it be made so by the honesty and bona fides of the transaction on the part of the plaintiff.'"

"So, as I said, you must at the outset determine whether or not this fence was a divisional fence. I might say in passing, perhaps, that the evidence on the

Millner *v*. Elias.

question of its not being on the line has been admitted, not for the purpose of deciding where the line is, but offered by the defendant as a part of the evidence to disprove the claim that it was a divisional fence. That is, the claim being if not on the divisional line, it would be most improbable that the parties would ever have agreed on its being a divisional fence. That is a question for you gentlemen to determine. . . . You can draw such inference from all of that evidence as you in your wisdom deem best and that is the reason the evidence has been admitted as to the location of this boundary line, not for you to determine where the boundary line is, but for you to determine whether or not this is a divisional fence."

The charge of the court in the first excerpt above quoted is adapted from the opinion of this court in *Talcott* v. *Stillman*, 28 Conn. 194, 198, and except for a few words is a quotation therefrom. The case last referred to was brought under the statute relating to a division by the selectmen of a divisional fence hitherto undivided between adjoining proprietors, and the allocation of one part to one proprietor and of another part to the other proprietor for purposes of erection, maintenance and repair. This statute now appears as General Statutes, § 5137, in which the procedure by the selectmen is similar to that provided by § 5135, on which the present action is brought. The plaintiff is attempting to show that the case last cited is not applicable to the situation disclosed in the record in the instant case, because under the facts in the authority cited, the selectmen undertook to locate a line and order the erection of a fence where none had previously existed, and it was properly held that the fence viewers had no jurisdiction to establish a disputed line, and that the defendant could introduce evidence as to its true location, and so "in the case at bar, the fence

had been in existence for a number of years, the true line was known and well established, and the plaintiff was seeking merely to recover for repairs to such existing fence; and it was not competent for the defendant to produce evidence concerning the location of the division line." The fallacy of the plaintiff's contention, especially as exhibited in the part quoted, is that it assumes, in the first place, as a fact, that the division line was known and well established, and hence not in dispute, when in fact, under the claim of the defendant, the line was not known and established, and was in dispute, and whether or not it was so in dispute was a question left to the jury, and evidently found by them in favor of the defendant.

The evidence was admissible for the reasons above stated by the trial court. The fact of whether or not the fence was on the divisional line would be of prime importance in determining whether a fence as located would have been regarded as a divisional fence. The jury evidently found that there was no line recognized by both parties as divisional, and hence, under the instruction of the court, that the selectmen were without jurisdiction in the matter. The court did not err in the admission of the testimony, nor in the charge to the jury as to its application in the case. The evidence certainly conduced in a reasonable degree to establish the improbability of a fact in issue, and was logically relevant to such fact, and not excluded by any rule or principle of law. *Plumb* v. *Curtis*, 66 Conn. 154, 163, 33 Atl. 998.

In her second grouping of reasons of appeal, plaintiff claims that the court erred in failing to charge the jury that the fence was a division fence. Pressing this point, plaintiff urges that the existing fence had served to divide the properties for eleven years, and that no claim was made by defendant to the selectmen to the

contrary, but was first made at the trial, when a trifling variation of an inch or two from the property line was claimed. The defendant was under no obligation to make any claim to the selectmen, although the court finds that he claimed to have proved that he informed them after receiving their notification that the division line was in dispute. He was not called upon to make any claim to the selectmen. The statute provides for no hearing. At the trial of the cause he made the claim, and that was the time and place to make it. Plaintiff further claims that it is not necessary that a partition fence be located precisely on the division line, but that it need only be substantially so located, in the absence of express or implied agreement to locate it elsewhere, and cites authority to that effect. This latter claim is involved in the third claim of error of plaintiff, and can better be considered in connection therewith.

In the third group of reasons of appeal, the plaintiff assigns error in the holding of the court that the defendant was not bound by a former alleged division of the partition fence. The claim of error is chiefly based upon a portion of the charge given, as follows: "The parol agreement, to use the legal term, more commonly spoken of as oral or verbal, as to the division of such fence, is valid only as between those parties and does not run with the land. That is, on the sale of this property by Mr. Buzaid to Mr. Elias, Mr. Elias was not bound by that agreement, as matter of law. He could, if he chose, have affirmed it, but he had the legal right to call upon the selectmen in their capacity as fence viewers for a new division if he could not agree with Mrs. Millner. On the other hand, he could either expressly or impliedly acquiesce in that division, if he chose, so it is a question for you to determine on this feature of it as to whether or not this defendant

agreed either expressly or impliedly that that was his portion of the fence to repair."

The plaintiff's counsel make the preliminary claim that the alleged parol agreement between the plaintiff and the defendant's grantor, relative to a division of the fence, was executed on both sides, was not within the statute of frauds and was binding, citing *Guyer* v. *Stratton,* 29 Conn. 421, 429. The claim is true to this extent, that if the jury found that this oral fence division was in fact made, it was binding on the parties thereto. As to whether it was in fact made there was contradictory evidence, and the issue was properly left to the jury for its determination.

In *Wright* v. *Wright,* 21 Conn. 329, 342, we held that "verbal agreements for dividing fences do not, *per se,* like covenants, run with the land in its transfers, against *bona fide* purchasers and attaching creditors; and that dividing and selling enclosed lands, *prima facie,* subjects them to a new division of fence among the new owners."

The plaintiff, admitting the force and application of this decision, seeks to limit its effect to be only to give to a new proprietor a right to ask for a new division and enforce it in the statutory manner, and until he does this, he is bound by an existing oral division. We do not so construe the statute. By its terms, it must exist as well for one proprietor as for the other; for the holder during a long period and for the recent purchaser. To give validity to this contention, even were it correct in law, it would be necessary to assume that the jury had found an actual division of the fence. This was a fact litigated at the trial and as to which the claimed proofs are contradictory, and therefore we must assume that the jury might have found the fact in favor of defendant.

The alleged oral division of fence, as the court in-

structed the jury in the portion of the charge last quoted, could have been expressly or by implication acquiesced in by the defendant. And the jury were further instructed by the court, that if such an acquiescence by defendant was proved, a verdict for the plaintiff would be justified.

All of the issues really in dispute at the trial arose out of the allegations of the first paragraph of the complaint, which alleged the ownership of adjoining lots "between which was a divisional fence, which the defendant was bound to keep in repair." As to the disposition of these issues, as we have seen, the jury were properly instructed as to the effect of evidence properly received.

There is no error.

In this opinion the other judges concurred.