## SILAS DAVIS *v.* STEPHEN MERRILL & ALS.

Under the 16th section of chap. 9 of the Revised Statutes, the wife, as the friend of an insane husband, may employ the selectmen of a town to commit such insane person to the State asylum.

The action of trespass will not lie in such case, the selectmen acting in good faith and not using any unnecessary force.

TRESPASS for assault and false imprisonment.

Plea, the general issue, and several special pleas, alleging the insanity of the plaintiff, and that the acts complained of were done by the defendants in the attempt to take and carry him to the asylum for the insane, by request of his wife and others, and that no more force was used than was necessary for that purpose.

Upon the trial the defendants offered evidence tending to prove that the plaintiff was an insane person, and that the acts complained of by him were done by them in the attempt to take and carry him to the asylum for the insane, by the request of his wife and others.

The plaintiff denied these facts, and offered evidence tending to sustain his denial.

No evidence was offered to prove that the plaintiff was under guardianship as an insane person, or that the judge of probate had authorized his commitment to the asylum.

The court instructed the jury, that, where there is no legal guardian, the law intrusts it to the relations and friends of an insane man to place him in the asylum in a proper case ; that to justify them in placing him there it is not necessary that the insane man should be dangerous.  If it is proper that he should be placed there because his case requires treatment in the asylum with a view to cure, or because his insanity is of such a character as to make it improper that he should remain in his family, or in the neighborhood, on account of the disturbance and trouble caused by his insanity, or for any other cause, the relations and friends may place him there ; that if the relations and friends in such a case act from good motives, with prudence and sound discretion, the law intrusts it to their judgment to decide, where there is no guardian, whether the insane person shall be sent to the asylum, and if they exercise their best judgment, honestly and discreetly, they are justified ; that the relations and friends cannot decide whether the person is insane ; that the fact of insanity must be proved on trial.

The jury returned a verdict for the defendants at noon on Saturday, the first of April.  On Tuesday, the 4th of April, about 9 o'clock in the evening, the plaintiff presented his exceptions to the foregoing instructions.  The defendants declined to consent that they should be then received.  They were received by the court, subject to the defendants' objection that they were offered too late.  The plaintiff moved to set aside the verdict for error in the said instructions.

The questions arising on the foregoing case were reserved for the determination of the whole court.

*D. Blaisdell*, for plaintiff.

*T. J. Smith & Hibbard*, for defendants.

NESMITH, J.  This was trespass for assault and false imprisonment. The plea was the general issue, with several special pleas, alleging insanity in plaintiff, and that the acts complained of were committed by defendants, in the attempt to take and confine him in the State asylum for the insane, by request of his wife and friends, and that defendants

were acting in good faith, using no more force than was necessary for that purpose.

Chap. 9, sec. 11, of the Rev. Stat., provides for the appointment of a guardian to take charge of the person and property of insane persons by the judge of probate. The sixteenth section of the same chapter provides "that the *parent*, guardian, or *friends* of any insane person may cause him to be sent to the asylum, with the consent of the trustees, and there supported on such terms as they may agree." This section appears to be comprehensive and broad enough to embrace the case before us. It seems to include all insane persons within its terms, except those having no *friends*, or such as can exercise the office of a parental relation. The statute gives authority to the parent, or friends, to make a contract with the officers of the asylum. The wife may properly be regarded as the *friend* of the husband in this case, and whatever the law permits her to do, she may, if necessary, require the proper assistance of another to execute.

Dr. Ray remarks, that by far the larger class of insane persons require no legal procedure at all for their commitment, and are better left to the management of the family or friends. To subject them to any legal formalities, beyond a compliance with a few simple rules, would be to inflict needless pain, and thus produce a certain evil, in order to avoid a contingent one. Ray on Insanity sec. 595.

In the case of Oakes, in Massachusetts, settled a few years since, Chief Justice Shaw remarks, "that the friends of an insane person are authorized in committing him to a hospital by the great law of humanity." 8 Law Rep. 122.

So, in the case, *Hinchman* v. *Richie & als.*, being an action brought against the relatives and others of the plaintiff, charging them with fraud, violence and other wrongs, in committing him to the Friends' Hospital, in Frankford, Penn., tried before Judge Burnside, in 1849, the Judge, in his charge to the jury, among other things, said, that if the defendants placed the plaintiff in the asylum for the mercenary purpose of getting him to convey his property, it would be a foul conspiracy, but if it was honestly done for the purpose of restoring him to health, the friends conscientiously believing him to be diseased, it presents a case in which such patients may be properly taken in charge by relations and friends.

"If the jury should be satisfied that plaintiff was partially insane, so that it would be dangerous to himself, or to his wife and children, to be at liberty, and that the defendants acted from pure motives, and placed the plaintiff in the asylum for the purpose of restoring him to health, and returning him sound to his family, *then I hold them justified.* Or, if the *defendants* acted under circumstances, such as would have induced a man of ordinary intelligence to have believed the plaintiff insane, and requiring medical treatment in a hospital, then plaintiff *cannot recover.*" These principles were sustained by the whole court. 2 Law Rep. New Series, 180.

According to the report of the commissioners on lunacy, in England, a board of eminent men at the head of whom stood Lord Ashley, a

learned jurist, made in 1849, it appears that a previous inquisition, under the forms directed by the Court of Chancery, is in fact practically had, in but a few instances, or in a small proportion of the whole number of commitments to hospitals there. Upon application to the Court of Chancery, there is sometimes a commission appointed, composed of a competent board of medical and legal examiners, who return the report to the court. Lord Ashley says this tribunal is useful only where insanity is likely to be of a permanent character, and the property of the lunatic is of such a nature as to require it, and of an amount adequate to meet the *expense* which is always considerable, and when the commission is contested, frequently very large. The court may and do sometimes submit matters of this kind to a jury. Hence, the application to the Court of Chancery is in most cases avoided, and the delay and expense incident to a commission saved. Out of 4028 patients in England, (many of them possessed of considerable property,) who were confined in asylums on the first of January, A. D. 1842, only 245 had been found lunatic by special inquisition.

The report closes by the statement that a rule had been recently adopted in many of the large asylums in England, which proved satisfactory to the friends of the insane and the public, "that no person could be admitted into any lunatic asylum, without a certificate of his insanity, signed by two physicians, within seven days previous to his admission, stating also the facts on which their opinion is founded." It is obvious that a regulation of this nature could be complied with readily, and without much expense, and would tend to allay doubts and suspicions of unfair dealing, and would prove practically a good substitute for a more expensive and dilatory legal inquisition into this class of cases. Such a rule of practice might be profitably adopted by the asylums here.

Under our practice in this State, where it becomes pretty certain that one of our citizens has become permanently insane, or is likely to be, and he has property, for the protection of his person and the community, as well as his property, a guardian is required, and may be appointed, agreeably to the requirements of the statute law. Where a guardian is thus appointed, he assumes the parental relation, and has generally the authority of a parent. Under our law, the guardian, having for the time being the legal custody of the person of the ward, may, of course, commit him to an asylum, and may make the requisite contracts with the managers of such institutions for their security, and bind the property of his ward to meet the same. Under the aforesaid 16th section of chapter 9, it was undoubtedly intended to confer upon the parents or friends of the insane the same power and duty to commit to an insane asylum, that a guardian legally appointed by the judge of probate would have. In this case, the nearest friend and relative of the husband is the wife. As before suggested, she, acting in good faith, would have the right to call in the aid of others, if found necessary.

It seems, she sought and obtained the assistance of the board of selectmen of the town of Orford for the time being. The law presumes that the men who act in this office would generally be capable of discharging a delicate duty of this kind, with due skill and discretion. It

is not to be presumed that such men would be influenced by mercenary or corrupt motives, or would use unnecessary severity in the discharge of an unwelcome duty. The defendants are employed by the wife. The fact of actual *insanity* in plaintiff also being found by the jury, at the time he is seized by the defendants, furnishes good grounds of justification for the defendants, and all necessarily employed in his commitment. The defendants are found to have acted in good faith, and not to have used unnecessary force. They cannot, therefore, be considered as trespassers or wrong-doers. We think the charge of the court, who tried the case, was judicious, and that there should be

*Judgment on the verdict.*