## JONES *v.* PERRY.

Where the fence between adjoining land-owners has been divided through-
out the whole length by the fence-viewers, one of the owners may lay a
part of the land on that line in common and be relieved from further
contribution to maintain the fence there, even although that part of the
fence had been assigned to him and he had built the fence.

In such case the other owner will be entitled to a new division of the rest
of the fence.

The plaintiff and defendant owned land adjoining. The line be-
tween was 148 rods long, running east and west,—Perry's land lying
on the north of this line, and Jones's on the south of it. A highway
bounded them both on the east, and a farm known as the John Carr
farm bounded them both on the west, though Perry's land was not
all the way of the same width from north to south. The following
diagram will represent the location and form of these lands.

The lands on both sides of the line were used for pasturage, and
at the west end was mostly woods and bushes. The fence on the line
had been legally divided and recorded. Perry had a piece at each end
of the line, designated on the plan as A B and D F, while Jones had
the two middle sections, B C and C D. In the fall of 1867 Jones
called out the fence-viewers to examine Perry's part of the fence on
this line (after having notified Perry, without effect, that it was insuffi-
cient, and requested him to repair it). The fence-viewers examined
the fence, and pronounced Perry's part insufficient, and gave him no-
tice thereof, and ordered him to put the same in repair. He repaired
the section A B, and also did something to that part between D and E,
and also built a new fence across from E to H, but did nothing to the
portion between E and F. After proper time Jones built a new fence

from E to F, and also did something to the part between D and E, and then called on the fence-viewers, who examined the fence and pronounced all of Perry's two pieces sufficient; and they appraised that part built and repaired by Jones. Jones thereupon brought this suit to recover one half the expense of the fence-viewers on both occasions of their coming out to examine the fence, and also for double the sum at which the fence-viewers appraised the cost of building what Jones had built.

It appeared in evidence that Perry for the first time gave notice to Jones of his intention to build a fence from E to H, and to lay that part of his land common which is designated on the plan as E F G H, when the fence-viewers were upon the ground the first time; that Jones objected to his doing so; and that Perry, after this time, and before the fence-viewers were upon the ground the second time, had built this fence from E to H, but the fence-viewers did not examine it, but kept upon the old line; and that Perry then and ever since has kept up the fence from E to H, and has done nothing to any part of the fence on the remaining three sides of E F G H, but has in fact thrown, and insists upon his right to throw, said piece in common, and that by so doing he is relieved of his liability to keep any of the fence around said piece in repair except upon the line *E H*; while Jones claims that, under the circumstances stated, Perry has no right to throw this part of his land in common, and thus throw upon Jones the burden of building the fence from E to F, which before belonged to Perry to build. No question is raised concerning the legality of the original division of the fence, or as to the regularity of the proceedings of the fence-viewers, the only question being as to Perry's right to throw said part of his land in common, and thus relieve himself from the burden of maintaining a fence on three sides of it.

*Marshall & Chase*, for plaintiff.

As the fence in question was repaired, and all the proceedings before the fence-viewers in relation thereto took place in the fall of 1867, before the General Statutes went into effect, the question raised in this case is to be decided by the provisions of chapter 136 of the Revised Statutes. The question before us is, whether this statute shall be so construed as to allow the defendant to throw a part of his land in common, as he has attempted to do, and to thereby relieve himself from the just burden that his agreement and the statute would otherwise impose upon him.

This statute provides (section 1) that " the owners of *adjoining lands* under improvement shall build and repair the partition fence between them in equal shares;" and (section 2) that any division of such fence made by the parties, &c., shall be forever binding upon them and succeeding owners of the land; and (section 3) that, if the parties cannot agree upon a division, the fence-viewers of the town may make it. Section 11—being the section under which the defendant claims his authority to do as he has done in this case—provides that "if any

of the owners of *adjoining lands* shall cease to improve *his land* (observe, that it does not read or imply *a portion* of his land), or shall lay the same in common, he shall not have a right to remove *his part of the fence* (referring to his part as a whole), but shall be under no obligation to repair or build the same so long as *said land* shall lay in common."

Our position is, that where the words "*adjoining lands*" and "*land*" are used in this statute, the legislature meant thereby the *adjoining tracts or pieces of land as whole tracts or pieces having known boundaries*, and not such particular portions of such whole tracts or pieces as for the time being happen to be under improvement; that the improvement of a part of such tracts gives character to the whole tracts, so that they may be said to be "under improvement," although every square rod or acre of them is not so, in fact. See Pamphlet Laws of Vermont for 1857, No. 22 ; *Wilder* v. *Wilder*, 38 Vt. 678; *Wiggin* v. *Baptist Society*, 43 N. H. 261. This must be so, at least after the owners thereof have limited, designated, or set apart tracts or pieces, and given character to them as being "under improvement," by agreement or proceedings before the fence-viewers, resulting in a division of the partition fence between such tracts or pieces. In the 7th section of the statute the phrase "the same tract of land" is used, referring to the adjoining lands after a division of the partition fence between them, which fully sustains this view. To illustrate our position from the facts in this case : The "adjoining lands" in question, within the meaning of the statute, are Perry's whole piece or tract of land, situated northerly of the line A F, and Jones's whole piece or tract of land situated southerly of that line—and not every inch or point of Perry's land on the north of this line, together with the inch or point of Jones's land adjoining it on the south of the line. The words "his land" in the 11th section, when applied to this case, mean Perry's whole tract or piece of land northerly of the division line, and not each point, inch, or other part of it, extending in an easterly and westerly direction on the line. If we are correct in this position, Mr. Perry cannot relieve himself from the obligation that he has voluntarily assumed, to maintain the fence from E to F—being a portion of his share of the fence—by ceasing to improve, or by laying in common that part of his land represented on the plan by the figure E F G H. To escape this obligation he must cease to improve, or lay in common, his whole tract or piece of land, extending the whole distance from A to F.

The history of legislation upon this subject in this State sustains this position. In *Wiggin* v. *Baptist Society* before cited, the provisions of the ordinance of the general court of the colony of Mass., passed in 1642, corresponding to section 11 of our statute, is quoted in part (page 262) in these words : "And if the first man shall after lay open his field," &c.,—the word "field" being used in that ordinance where the word "land" is in ours. A "field" is a piece of *inclosed land*— substantially what we claim "land" means in our statute. In 1718 this ordinance was substantially reënacted, the clause corresponding

to our 11th section being as follows: " And, if the first improver shall after lay open *his said field,* then the neighbor shall enjoy *his said half fence* to his own use purchased as aforesaid; and shall have liberty to purchase *the other half fence,*" &c.   Laws of N. H., 1771, page 121; see also page 185, section 2.   Section 7 of the statute of Feb. 8, 1791 (N. H. Laws, 1830, page 196), reads, " where one party shall cease to improve his land, or shall lay *his inclosure,* before under improvement, in common, he shall not have a right to take away his part of the fence," &c.   These statutes all express the idea that the lands on each side of the partition fence are to be regarded as " fields," "inclosures," entire tracts or pieces, showing what has been the intention of legislatures upon this point in times past.   Although the words of the statute under consideration are somewhat different from those of the older statutes, yet they naturally express the same idea, and do not indicate that the legislature intended to make any change in the law.   The statutes of the other New England States are to the same effect—which tends to show that the law thus construed is founded in justice.   Rev. Stat. of Maine, chap. 22; Vermont Laws of 1857, No. 22; Gen. Stat. of Mass., chap. 25; Gen. Stat. of Conn., page 443.

A construction of our statute that would allow Mr. Perry to lay a part of his land in common, as he claims the right to do, would be unreasonable and unjust.   In this, and many instances, it would enable parties to exchange their just obligations for lighter ones, and thereby to injure the owners of lands adjoining theirs.   They could use the statute to protect their fraudulent acts in this respect.   In this case Mr. Perry seeks to avail himself of the benefit of all the fence that the statute requires the plaintiff to maintain, extending from B to D— a distance of sixty-nine rods—and in return, wishes to build only portions of his part of the fence,—viz., those portions extending from A to B (thirty rods), and from D to E (thirteen rods)—a distance of only forty-three rods in all.   It is true that he is also obliged to maintain the fence from E to H, but this is short as compared with the distance from E to F,—what he ought to build; and besides, it does not benefit the plaintiff in the least.   The plaintiff must build the fence from E to F, in addition to the sixty-nine rods required of him by the statute, in order to keep his land inclosed, which is unfair and unjust.   And the case shows that Mr. Perry intended to do his neighbor this injustice, for he neglected to repair his fence after he was, in a neighborly manner, notified of its insufficiency and requested to repair it.   Instead of repairing it, he waited till his neighbor was obliged to appeal to the fence-viewers for relief, and then for the first time he said he was going to build the fence from E to H, and soon afterwards did so.   Cases can be imagined where the injustice would be even greater.   The statute should not be so construed as to admit of this injustice; the legislature did not intend any such thing.

*Chas. P. Sanborn,* for defendant.

The single question raised in this case is, Can an adjoining land-

owner, by ceasing to improve part of his land, or laying it in common, be relieved from the obligation of repairing or rebuilding his part of the division fence separating the portion so unimproved, or in common, from the adjoining land-owner?

All laws with reference to fences and their maintenance are created by statute, the common law requiring nothing in that regard of adjoining land-owners. *Glidden* v. *Towle*, 31 N. H., pp. 168–9.

The question then turns upon the construction that shall be given to chap. 136 of the Rev. Stats.

Under that statute the only obligation to fence is between adjoining lands under improvement. Section 11 of the same chapter provides that " if any of the owners of adjoining land shall cease to improve his land, or shall lay the same in common, he shall not have a right to remove his part of the fence, but shall be under no obligation to repair or rebuild the same, so long as said land shall lay in common."

Perry then was obliged to fence only against his land " under improvement." The part E F G H was not under improvement, and consequently he was not obliged to fence it.

It having been once improved and subsequently laid in common, the provisions of section 11 above quoted apply, which provide two things, —viz., that he shall not remove his part of the fence, nor be under any obligation to repair or rebuild it " so long as said land shall lay in common;" "his land" and " said land" referring unquestionably to the land so laid in common. By the erection of the fence E H, all his land under improvement was fenced.

This obligation to fence is for the mutual benefit and protection of both parties, and where one party needs not the benefit or protection that obligation ceases as to him.

The intention of the legislature, in passing the statute referred to, was to enact a law that should be just and reasonable; but to give to it the construction asked by the plaintiff would be both unjust and unreasonable.

If Mr. Perry desired to improve only the part of his land designated on the diagram by " orchard" as an orchard, or a square rod or two as a garden, and properly fenced such improved piece, it would be a hardship to require him to maintain seventy-nine rods of fence adjoining his common land when he received no benefit or protection from it. Upon such a construction the court might hold and must hold that the improvement of one acre on a thousand acre lot was the improvement of the whole lot, and that it should all be fenced.

If Mr. Jones is now obliged to maintain more than his just share of the fence from A to E, he must make a re-division of it with Mr. Perry. If Perry will not agree to a division, Jones's statute remedy is clear; and the division being once made, neither party will have suffered any wrong.

BELLOWS, C. J. The question reserved, and the only one argued, is, whether one adjoining land-owner can lay in common a part of a tract of land once under improvement, and where the fence had been legally

divided, and thus relieve himself of the burthen of maintaining the fence. In this case the fence on the line of the part which defendant proposed to lay in common, in the division by the fence-viewers, had all been assigned to the defendant, and the fence had once been built throughout the entire line.

If by laying in common, after such division, all the land of one proprietor on the line so assigned to him, he could thereby throw upon the other proprietor the burthen of maintaining the whole fence, not only against the land laid in common, but against the land which remained enclosed and improved, it would manifestly be so unjust as to bear strongly against a construction which should allow a part to be so laid in common. On this point the Rev. Stat., ch. 136, sec. 2, provides that a division of fence made by the parties in writing, and recorded, shall be forever binding upon the parties and all succeeding owners and occupants of the land ; and sec. 3 provides that a division made by the fence-viewers shall be of the same force as a division made by the parties. These terms are explicit, but at the same time it is unquestionable that the parties may by agreement change or abrogate such division ; and it must be equally clear, that if one party lays in common all the land adjoining the fence assigned to him to maintain, he must be regarded as having assented to the abrogation of that division. He has elected to abandon it, and having voluntarily destroyed its mutuality, he could not be permitted to enforce it against the other owner.

This view is strongly countenanced by decisions in other States to the effect that if the land of one adjoining owner is sold in different parcels, after a division of the fences, so that new conterminous proprietors are introduced, each one extending over a part only of the line so divided, a new adjustment and division becomes necessary, holding that the statute refers to the state of things existing when the fence was divided. *Adams* v. *Alstyne,* 25 N. Y. 236 ; *Wright* v. *Wright,* 21 Conn. 329.

It is obviously the policy of our statutes to require adjoining land-owners to contribute to the maintenance of division fences only when their lands are under improvement ; and also to relieve them from the burthen when they shall cease to improve, or lay their lands in common ; or, in other words, that they shall be compelled to contribute to the maintenance of fences only when they themselves have occasion for them. By sec. 11, of the same ch. 136, Rev. Stat., if such owner shall cease to improve his land, or shall lay the same in common, he shall not remove his part of the fence, but shall be under no obligation to repair or rebuild it so long as his land shall lay in common. It is urged by the plaintiff that the term *his land* means his whole land, and not a part ; but we are unable so to construe it. It is very clearly not the policy of this statute to compel a party to maintain a fence for which, in consequence of laying his land, or part of it, in common, in good faith, he has not any longer the slightest occasion.

For ought we can see it might as well be contended that the whole of an adjoining lot was under improvement because one corner of it.

was so improved, as to hold that, after having been improved and enclosed, none of it could be laid in common because one corner was still improved. If an adjoining owner has occasion for a fence to protect a portion of his land under improvement, he can be compelled, by application to the fence-viewers, to contribute to maintain the fence so far as he has occasion for it; but if he chooses to let the greater part of the lot lie common, he cannot be compelled to contribute to the fence on that part; and so we think it must be when he chooses to throw in common a part of his land that had once been enclosed and improved.

Nor does the fact that the land in question has once been under improvement and the fence divided throughout the entire line, prevent the exercise of the right to lay a part in common and be relieved of the burthen of fencing it. It is not questioned that he may lay the whole in common and be relieved of the entire burthen; and we think that both the terms of the statute, and its general policy, are broad enough to embrace a case like this.

Another question might be raised on the case reported, and that is, whether the land was actually laid in common before the plaintiff had built this fence for which he claims to recover. It is stated that defendant notified plaintiff of his intention to do so when the fence-viewers were on the first time; but upon the authority of *Field* v. *Proprietors*, 1 Cush. 11, such notice alone would not seem to be sufficient, but the actual laying it in common would seem to be necessary. The cross fence from E to H is said to have been built before the fence-viewers were on the second time, which was after the plaintiff had built the fence; but it does not appear whether this fence from E to H was built before plaintiff had built or repaired the fence in question, or whether the land had actually been laid in common or not.

Under these circumstances, it would not be useful to consider this point further.

*Case discharged.*