## WALKER *v.* WETHERBEE.

When a division of fence in a statutory method, between owners of adjoining lands, is rendered unequal by a change of land-title on either side, severing the boundary line, the statute authorizes a new division.

Impounding animals doing damage in an enclosure is a cumulative remedy. The statute of pounds does not impair the common-law right of doing anything reasonably necessary to be done in defence of property.

TROVER, for two horses. The plaintiff's father and one Humphrey formerly owned farms in Langdon adjoining each other, the line between them extending some one hundred rods; and they divided the fence on this line, Humphrey taking the north half and Walker the southerly half to make and keep in repair. This division was in writing, was in proper form, and no objection was made to its validity as between the original parties. The plain-

tiff now occupies the farm which his father then owned.     But
Humphrey sold to one person the northerly half of his farm, which
is now occupied by the defendant, and the southerly half of his
farm to another person, who now occupies it; and Humphrey is
dead.    If the division remains in force, the defendant was bound
to keep in repair all the fence between him and the plaintiff.
The court ruled that the division of the fence was not binding
between these parties, and the plaintiff excepted.

The plaintiff's two horses jumped over the fence, from the plain-
tiff's land into the defendant's; the defendant turned them into
the road,—but they returned and troubled him further, and he took
them and put them into his barn, and sent word to the plaintiff to
come and get them, but he did not go; and the defendant kept
them in the barn two weeks, until after suit was brought, and
then sent them to the plaintiff.    The defendant had no intention
of impounding them.     The court ruled that the defendant was
liable for converting the property, and the defendant excepted.

The defendant offered to prove that the plaintiff's two horses had
repeatedly trespassed upon his premises during that season; that
on one occasion he took one of them from his pasture and put it
into his barn for safe keeping, and gave notice to the plaintiff, who
took it away without objection, expressing no dissatisfaction with
what the defendant had done; that on the day of the alleged conver-
sion, the same horses wrongfully came into the defendant's pasture,
and were driven into the highway and started towards their home
by the defendant's servants, but they soon returned, and got into
the defendant's mowing and soon after into his pasture, which was
well fenced, and began to kick and strike with their fore feet the
defendant's breeding mares and young colts then kept in his past-
ure, and the plaintiff's horses were taken from the pasture and
put into the defendant's barn for the safety of the mares and colts
and for the convenience of the plaintiff, and with no purpose or
intention of doing anything to which the plaintiff would object, or
of exercising any further control over them than their own safety
and that of the defendant's animals required; and that he imme-
diately notified the plaintiff of what had been done with the two
horses, that he might find them without trouble and take them
away.    The court excluded the testimony, and the defendant
excepted.    Verdict for the plaintiff.

*Wheeler & Faulkner*, for the defendant.

1. The ruling of the court in regard to the division of the fence
between the parties was correct.    *Jones* v. *Perry*, 50 N. H. 134.

2. The testimony offered by the defendant, and excluded by the
court, was competent, and should have been admitted.    It tended
to establish a state of facts which disproved the inference that
there had been a conversion of the property.    The defendant had

a right to protect his own property from injury, and to take such measures to that end as might be necessary. Since the obvious remedy of turning the plaintiff's animals into the highway had been tried and found ineffectual, the defendant might, for the safety of his own animals and the convenience of the plaintiff, confine the horses in question where they could do no· harm until the plaintiff could resume his control of them,—as he might confine his neighbor's dog, caught in the act of biting his sheep or children.

The fact that one of the horses had been so confined by the defendant on a similar occasion, without objection on the part of the plaintiff, was by implication a license to treat these animals in the same way until notice that the plaintiff dissented from the act. The jury should have been allowed ˙to pass upon that question. Where the alleged conversion is an act of kindness done to prevent mischief, and with no intent to inflict an injury, an action of trover will not lie. *Drake* v. *Shorter*, 4 Esp. 165. An act of charity in the interest of humanity,· cannot at the election of the recipient be converted into a wrong. The fact that one retains possession of the property of another without his consent does not necessarily constitute a conversion. All the circumstances of the case are to be considered in determining the character of the possession. *Wellington* v. *Wentworth*, 8 Met. 548. And in this case the defendant claims that in what he did he did not attempt to exercise any dominion over the property in defiance of the rights of the plaintiff, but did a friendly act for the protection of the property of both parties.

*E. L. Cushing* (with whom was *B. Lovell*), for the plaintiff.

1. As the verdict was for the plaintiff, the ruling on the first point with regard to the division fence was immaterial. If, however, there should be a new trial, either by the order of the court in this proceeding or on a review, the point might become material. The words of the statute seem to be perfectly plain, and do not seem to admit of more than one construction. G. S., c. 128, s. 2. The words are, "shall be binding upon the parties and all succeeding owners and occupants of the land."

In *Jones* v. *Perry*, 50 N. H. 134, *Bellows*, C. J., refers to a case in Connecticut and another in New York, in which it was held that the selling of the land on one side or the other in portions would break up such a division and render a new one necessary; but the wording of the statute which has received this construction is not given, and therefore it is impossible· to estimate the importance of the authority.

We suppose that if this statute is to be construed,—a term which ordinarily means assigning to a statute a meaning which does not naturally belong to it on account of some supposed inconvenience which the court assumes itself to be better able to understand

than the legislature,—the ground of the reason for the construction will be found in the assumed or supposed inconvenience which might result from the imposition of the servitude of supporting fence on particular portions of land. The inconvenience which the legislature intended to avoid was the losing of valuable fence belonging to one party or the other when the division should be thrown up and a new division established. We apprehend that a large proportion of the land-owners in the state have always understood that having established a division and built according to it, they would always have the benefit of their good fence, and would be most impressed by the inconvenience of losing it.

2. The cases of *Leighton* v. *Shapley*, 8 N. H. 359, and *Drew* v. *Spaulding*, 45 N. H. 472, are authorities to show that the facts on which the plaintiff relied, and which the court ruled were sufficient to make the defendant liable, were so, and that the ruling was right.

3. If the facts which the defendant offered to show as a reason why he should take possession of the horses really existed, they furnished no excuse for abandoning the remedy provided by the law and taking the remedy into his own hands. It was exactly the case for which the law provides the remedy of impounding, which in this case would have been complete. If, therefore, these facts, there being no law for impounding, could be held by the court, or found by the jury under the instruction of the court, to be from the necessity of the case a justification or excuse for violating the plaintiff's right of property, the law relative to impounding would entirely do away with this necessity. The defendant had a right to take up the horses for the purpose of impounding, but having abused that right he became a trespasser *ab initio;* and this is precisely one of that common class of cases in which the plaintiff may waive the trespass and maintain his action of trover. In every case like this the plaintiff might justify seizing animals in order to prevent their doing mischief, but the law, having provided the remedy by impounding, does not permit the party to take into his own hands the remedy by a different mode. As to the proof of a secret intention, see *Wadleigh* v. *Janvrin*, 41 N. H. 503.

SMITH, J. 1. Any division of fence by the owners of adjoining lands under improvement, in writing, and recorded in the town records, is made forever binding upon the parties and all succeeding owners and occupants of the land. R. S., *c.* 136, *s.* 2. This provision of the statute refers to the state of things existing when the fence was divided, and before the land of one adjoining owner is sold in different parcels to different persons; otherwise, when new coterminous proprietors are introduced, each one extending over part only of the line so divided, the burden of maintaining the fence as divided originally by the adjoining owners of the whole line will be unequally distributed. The plaintiff, by buying

the south half of the Humphrey farm, would not throw upon the owner of the north half the burden of maintaining more than one half of their partition fence. Jones v. Perry, 50 N. H. 134; Adams v. Van Alstyne, 25 N. Y. 236; Wright v. Wright, 21 Conn. 329. This view of the construction of the statute is strengthened by the fact that in the revision of the statutes in 1867 the word "forever" is omitted. G. S., c. 128, s. 2. A reasonable construction of the statute is, that the division fence made by owners of adjoining lands under improvement, in writing, and recorded in the town records, is binding upon the parties and all succeeding owners and occupants of the land until the line is severed by a conveyance of a part of the land on one side, when new divisions of the severed line are authorized. If the defendant is bound to maintain all the fence between his land and the plaintiff's until a new division is made, he is not shown to have neglected that duty. It does not appear that the fence was insufficient, or that the plaintiff's horses were in the defendant's land through any fault of the defendant. The obligations of the parties as to maintaining the fence or keeping their horses on their own land after the line was severed by change of title and before a new division, is a question we do not decide.

2. The plaintiff contends that the defendant is liable because he did not proceed in the manner prescribed by G. S., c. 129, by impounding the horses taken in his enclosure. The defendant offered to show that he took the horses into his possession for the protection of his own stock and for the convenience of the plaintiff, with no purpose or intention of exercising any further control over them; and he contends that in carrying out this purpose he was not guilty of a conversion. At common law the aggrieved party was personally empowered to seize and impound beasts found doing damage in his enclosure, both because it might otherwise be impossible at a future time to ascertain whose cattle they were that committed the trespass or damage, and that he might hold them as a pledge for the satisfaction of the damages done. The same right is given by statute. G. S., c. 129, s. 1. If the defendant had sought to recover for the damage done by the plaintiff's horses, he might have proceeded according to the statute by impounding them, or by his action of trespass at common law. He might also waive his claim for damages, as he has done. What, then, was he to do when the plaintiff's horses broke into his pasture and began to injure his mares and colts? His remedy by impounding or by action was not exclusive. He had the legal right to remove them. In protecting his own animals, it was his right and duty to do with the plaintiff's whatever was reasonably necessary to be done under the circumstances. Aldrich v. Wright, 53 N. H. 398.

When the goods of another are taken under the pressure of what is called a moral necessity, a license will sometimes be presumed, and the taking will not be a conversion; as, where a thing is taken

to do a work of charity, or to do a kindness to the owner, with no intention to do an injury to it, or of converting it to the use of another. 2 Gr. Ev., s. 643; *Clarke* v. *Clarke*, 6 Esp. 61; *Drake* v. *Shorter*, 4 Esp. 165; *Plumer* v. *Brown*, 8 Met. 578. If the plaintiff's horses had been taken by the defendant into his possession upon a sudden emergency like shipwreck or fire, or had been taken up as estrays to prevent their becoming lost or stolen or to ensure their safety from danger, the taking would not have amounted to a conversion. If the circumstances under which they were removed, as stated in the defendant's offer, do not show an emergency much like that where property is taken possession of to ensure its safety, the plaintiff cannot for that reason complain, if the defendant did not do more than was reasonably necessary. They were taken doing damage in the defendant's enclosure. They were removed from the defendant's pasture to protect his property, and put in his barn for their safety and the plaintiff's convenience. If the defendant did no more than was reasonably necessary under the circumstances, he was not guilty of a conversion, and it is not material that he waived his claim for damages by not pursuing his statutory remedy by impounding, or common-law remedy by suit in trespass. Whether what he did was reasonably necessary to be done under the circumstances, or whether he went beyond the line of reasonable necessity, was a question which should have been submitted to the jury. For error in excluding the testimony offered, the verdict should be set aside.

SARGENT, C. J., concurred in the conclusions arrived at in the foregoing opinion.

DOE, J. If the plaintiff's horses were wrongfully on the defendant's land, the defendant had the right to do anything that apparently was reasonably necessary to be done for the protection of his property against them. *Aldrich* v. *Wright*, 53 N. H. 398; *Hoit* v. *Stratton Mills*, 54 N. H. 109, 116; *Cory* v. *Little*, 6 N. H. 213; *Gilson* v. *Fisk*, 8 N. H. 404; *Wood* v. *Gale*, 10 N. H. 247; *G. F. Co.* v. *Worster*, 15 N. H. 412, 438, 439; *Jones* v. *Williams*, 11 M. & W. 176; *Colby* v. *Jackson*, 12 N. H. 526, 530; *Davis* v. *Merrill*, 47 N. H. 208; 3 Am. L. Rev. 198; *Shuttleworth's Case*, 9 A. & E. N. S. 651, 659, 662; *Fletcher* v. *Fletcher*, 1 E. & E. 420; *Jones* v. *Root*, 6 Gray 435, 437; Foster Cr. L. 273; 1 Hale P. C. 479; Doct. & St., Dial. 2, c. 27; 3 Camp. Ch. J. (3d Eng. ed.) 416, 417; 1 Bl. Com. 139, Sharswood's note; 2 Kent Com. 339; 19 M. L. Rep. 245; *Taylor* v. *Plymouth*, 8 Met. 462, 465; *Surocco* v. *Geary*, 3 Cal. 69, 71; *McDonald* v. *Red Wing*, 13 Minn. 38; *Mayor of New York* v. *Lord*, 17 Wend. 285, 290; *Russell* v. *Mayor*, 2 Denio 461, 474, 475, 479, 484, 488; *Wynehamer* v. *The People*, 13 N. Y. 378, 401, 402, 439; 13 Op. Att. Gen. 111; Horr. & Th. 863–904. If they jumped into his pasture without any fault on his part, he could maintain trespass.

His statutory remedy of impounding was cumulative. *Stafford* v. *Ingersol*, 3 Hill 38; *Inman* v. *Tripp*, 11 R. I. 520, 626; Sedg. St. Law (2d ed.) 30, 75. His right of property was not created by statute. The statute of pounds gave him an additional remedy for his natural and common-law right. He turned the horses into the road, but they returned and troubled him further, and he put them into his barn and sent word to the plaintiff to come and get them. If they were wrongfully on his land, it was reasonably necessary for him to shut them up, notify the plaintiff, and keep them till the plaintiff took them away, or till he could safely turn them loose or make some other reasonable disposition of them more convenient for himself. There was no evidence tending to show that what he did was unnecessary or unreasonable; and, if there was no other ground on which the plaintiff could recover, he should have been non-suited.

FOSTER and HIBBARD, JJ., concurred.

LADD, J. The question was, whether the defendant's acts in taking up the horses, etc., amounted to a conversion.

Two things must be certain: (1) The defendant was not bound to take upon himself the perils of an attempt to impound the offending animals: he might forgive or waive any claim he had for damages;—(2) he was not bound to stand by without raising a hand, and see them destroy or injure his brood mares and young colts. He had driven them into the highway once, and started them towards home; but this was ineffectual, for they returned directly to the same mischief again. Surely he might do something to protect his property against a lawless and persistent invasion of that sort. What should it be? He must decide for himself, in the first place, upon the proper course to be pursued; and he had a right to be governed by all the circumstances under which he was compelled to act,—the disposition manifested by the plaintiff's horses, the character and value of his own property which was threatened, the nature and imminence of the danger to be averted. It was ultimately for the jury to say whether the course he took was reasonable, such as a fair man, governed by a just regard for the rights of his neighbor as well as a proper and legal purpose to protect and defend his own property, might take. And in deciding that question the jury ought to be placed in his position; that is, they ought to have all the light thrown upon his act by the circumstances under which it was done.

The defendant did not assert any dominion or ownership over the horses. He seasonably notified the plaintiff of what he had done, and invited him to come upon his premises and take the animals away. If the course he took was reasonable, and reasonably necessary for the protection of his own property, there was no conversion. That was a question for the jury, provided there was

any evidence upon which it could legally be found that the act was unreasonable. I think the evidence excluded should have been received. Whether a verdict should not have been ordered for the defendant we need not inquire, as that question is not raised by the case.

*A new trial granted.*